Gants, Ralph D., J.
On June 1, 2006, the defendant Darryl Green was indicted by a Suffolk County grand jury for the murder of Terrell Gethers (“Gethers”) on August 25, 2001. The defendant now moves to dismiss the indictment on the grounds that his rights to a speedy trial under the Sixth Amendment of the United States Constitution and Article 11 of the Massachusetts Declaration of Rights have been violated. The defendant also moves to obtain discovery, which he contends is necessary to establish that his speedy trial rights have been violated. After hearing, the defendant’s motion to dismiss is DENIED, as is his motion for discovery related to the motion to dismiss.
BACKGROUND
On August 29, 2001, four days after Gethers’s death, the defendant was one of twelve persons indicted by a federal grand jury in Massachusetts for conspiracy to sell crack cocaine and for the distribution of crack cocaine (“the Narcotics Indictment”). Memorandum of Decision and Order on Motion to Suppress Intercepted and Recorded Statement at 6, Aug. 1, 2007 (Hely, J.) (“Judge Hely Decision”). The defendant was arrested on September 20, 2001 on a federal arrest warrant arising from this federal Narcotics Indictment. Id. at 6-7. According to the defendant’s affidavit, which this Court will assume to be true for purposes of this motion, he was arrested by Massachusetts State Police and Brockton Police Department officers and taken to the Boston Police Department headquarters, where he was questioned about the Gethers homicide before being transferred to federal custody, where he remained. On July 17, 2002, while the Narcotics Indictment was still pending, the defendant was indicted by a federal grand jury in Massachusetts on a separate indictment charging him with various crimes under the Racketeer Influenced and Corrupt Organizations Act (“the RICO Indictment”). One of the RICO crimes for which the defendant was indicted alleged that he committed the murder of Gethers in aid of racketeering, which subjected the defendant to the federal death penalty. The Department of Justice chose to seek the death penalty against the defendant for his alleged commission of this murder in aid of racketeering.
The RICO indictment was severed into three trials, with defendants Jonathan Hart and Edward Washington tried first. In order to prove the defendants guilty of any of the racketeering charges, the government needed to prove the existence of a racketeering enterprise. The jury deadlocked on this issue, which necessitated a mistrial. On January 11,2006, District Court Judge Nancy Gertner directed a not guiliy verdict under Fed.R.Crim.P. 29 as to Hart and Washington based on the insufficiency of the evidence as to the existence of a racketeering enterprise.
On June 1, 2006, a Suffolk County grand jury indicted the defendant for the murder of Gethers. [1] On or about June 9, 2006, the United States dismissed the federal charges against the defendant under the RICO Indictment. The defendant, however, remained in federal custody because he continued to await trial on the Narcotics Indictment. He was scheduled to be arraigned in Suffolk County Superior Court on the murder indictment on September 27, 2006, but the docket reflects that the federal authorities declined to transport him to the Superior Court, so the arraignment was postponed until October 5, 2006, when he was arraigned.
On March 26, 2007, the defendant pleaded guiliy in federal court before Judge Mark Wolf to Counts 25 and 26 of the superseding Narcotics Indictment. On June 20, 2007, he was sentenced by Judge Wolf on those counts to time served, plus 48 months of supervised release upon his release from state custody, and was transferred to state custody, where he presently is held awaiting trial on the pending murder indictment.
DISCUSSION
The defendant argues that his right to a speedy trial attached when he was first arrested by state and local police on September 21, 2001, and that the nearly six years that have passed since that arrest have violated his right to a speedy trial. His contention is legally and logically without merit.
Under Mass.R.Crim.P. 36, a defendant is entitled to a dismissal of the charges against him if he is not brought to trial within the time limits set by the Rule. Mass.R.Crim.P. 36(b)(1). Under this Rule, a defendant “shall be tried within twelve months after the return day in the court in which the case is awaiting trial,” excluding the sources of delay identified in the Rule. *266 Mass.R.Crim.P. 36(b)(1) and (2); Commonwealth v. Sigman, 41 Mass.App.Ct. 574, 575 (1996). Therefore, under this Rule, the “speedy trial clock" began to run from the date of his initial appearance in Superior Court on the murder indictmentOctober 5, 2006. The defendant does not even contend that he is entitled to a dismissal under Mass.R.Crim.P. 36 because the docket plainly reflects excludable delay, such as the time needed to resolve the defendant’s motion to suppress his recorded statement, that would justify the failure to resolve this case within twelve months.[2] See Barry v. Commonwealth, 390 Mass. 285, 291 (1983) (once the defendant has made a prima facie showing that the time limit established in Rule 36 was not met, the burden shifts to the Commonwealth to justify the delay).
Since the defendant plainly is not entitled to a dismissal on speedy trial grounds if his right to a speedy trial attaches on the date of his arraignment in Superior Court, as provided in Mass.R.Crim.P. 36, the defendant rests his motion to dismiss on constitutional speedy trial grounds, contending that his right to a speedy trial attached on the date of his arrest on August 29, 2001. That arrest, however, was based on a federal warrant arising from the federal Narcotics Indictment; it was not based on a Massachusetts arrest warrant charging him with murder. [3] Therefore, the defendant essentially contends that this Court should treat his date of arrest on the federal Narcotics Indictment as the date on which his right to speedy trial on state murder charges attached. This argument, on its face, is illogical, since the Commonwealth cannot reasonably be asked speedily to bring a defendant to trial on state murder charges before he has been charged with murder in state court.
The defendant seeks to escape this logical problem with two alternative contentions. First, he essentially contends that, at the time the defendant was arrested on the federal Narcotics Indictment, the Commonwealth had sufficient evidence to charge him with Gethers’s murder but chose strategically to wait, since he would be held in federal custody anyway on the federal narcotics charges, so his right to a speedy trial attached upon that arrest. Implicit in this contention is that the defendant enjoys some entitlement to be charged with Gethers’s murder once the Commonwealth had sufficient evidence to indict him for this crime, since his right to a speedy trial would begin from this moment in time. A defendant plainly enjoys no such entitlement to be charged with a crime at the earliest possible time. See United States v. Picciandra, 788 F.2d 39, 42 (1st Cir. 1986) (“The prosecution has wide discretion in deciding to delay the securing of any indictment in order to gather additional evidence against an individual”). Nor does he enjoy any such entitlement simply because another sovereign (here, the United States) has charged him with another crime (here, narcotics violations). United States v. MacDonald, 456 U.S. 1, 10 n.11 (1982) (”[A]n arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign”).
Second, he essentially contends that, because he was arrested by state and local police on the federal narcotics warrant and questioned about Gethers’s murder, this should be treated as an arrest on state murder charges, so his right to a speedy trial should attach from the date of that arrest. The mere fact that a federal arrest warrant was executed by state and local police, working in cooperation with federal law enforcement authorities, has no bearing on when the speedy trial clock commences. Nor does the fact that he was under suspicion for Gethers’s murder at that time transform his narcotics arrest into a murder arrest. Although an arrest may trigger the right to a speedy trial, it does so only as to the crime for which the defendant is arrested and eventually tried, not to other crimes which may be suspected and under investigation, but not yet charged, at the time of arrest. See RaShad v. Walsh, 300 F.3d 27, 36 (1st Cir. 2002).
Finally, and in the alternative, the defendant contends that, if his right to a speedy trial on the state murder charges did not commence on the date of his arrest on the federal Narcotics Indictment, it certainly commenced on or about July 17, 2002, when he was indicted on the RICO Indictment which charged him with the murder of Gethers in aid of racketeering. This alternative argument suffers from the same fundamental logical flaws. The Commonwealth could not speedily bring the defendant to trial on state murder charges until a state grand jury indicted him on those charges; he could not be tried for murder in a state court simply because a federal grand jury had indicted him for committing the murder in aid of racketeering. Nor does the fact that a federal grand jury had indicted the defendant for murder entitle the defendant to have state law enforcement immediately decide whether it, too, will charge the defendant in state court for that same murder. Therefore, the right to a speedy trial on a subsequent state murder indictment cannot run from the date of indictment (or the date of initial appearance) on the federal murder charge. See United States v. Marler, 756 F.2d 206, 211 (1st Cir. 1985) (emphasis omitted), quoting United States v. MacDonald, 456 U.S. 1, 10 n.11 (1982).
The defendant contends that distinguishing between the federal and state murder charges is not appropriate because the federal RICO prosecution was a “sham prosecution,” citing Bartkus v. Illinois, 359 U.S. 121, 123-24 (1959), and United States v. Williams, 104 F.3d 213, 216 (8th Cir. 1997). In Bartkus, the Supreme Court suggested, in dicta, that a defendant’s Fifth Amendment rights under the Double Jeopardy Clause might be violated if, following an acquittal in a federal criminal trial, a subsequent state prosecution regarding the same conduct is really just a “sham and a cover” for what in actuality is another *267 federal prosecution. Bartkus, 359 U.S. at 124. Whether such an exception actually exists has been cast into serious doubt. See United States v. Alvarez, 928 F.Sup. 734, 737 (N.D.Ill. 1996) (finding that “the so-called Bartkus exception has gradually been eroded ... to the point of extinction”). In fact, neither Bartkus nor Williams found the existence of a sham prosecution.
Even assuming that a sham prosecution exception to the dual sovereignty doctrine exists, the exception is not applicable in this case. Since the United States voluntarily dismissed the defendant’s murder in aid of racketeering indictment before any trial of the defendant commenced, jeopardy never attached to this federal indictment so there can be no issue of double jeopardy.
Moreover, here, the United States Attorney dismissed the RICO Indictment because the government was unable to present legally sufficient evidence that the defendant participated in a racketeering enterprise, not because it was unable to present legally sufficient evidence that the defendant was responsible for Gethers’s murder. The inability of the United States Attorney to present legally sufficient evidence as to this required element of the crime of murder in aid of racketeering has no bearing on when the speedy trial clock commences in the subsequently filed state murder case, regardless of whether the Suffolk County District Attorney knew or anticipated that the United States Attorney would be unable to meet his burden of proof on this element. The Suffolk County District Attorney was entitled to wait until the United States Attorney had exhausted his efforts to prosecute the defendant federally before seeking a state murder indictment, regardless of the District Attorney’s prediction as to the likelihood that the United States Attorney would prevail in proving a racketeering enterprise in the federal prosecution. See United States v. Mejias, 552 F.2d 435, 441-42 (2d Cir. 1977) (noting that one sovereign is not bound by the actions of another, and that “successive state and federal prosecutions are constitutionally permissible”); see also Heath v. Alabama, 474 U.S. 82, 93 (1985) (holding that Alabama had the right to determine whether Georgia’s prosecution of the defendant for the same murder adequately vindicated the violation of Alabama law).
If the defendant’s right to a speedy trial on the state murder indictment truly commenced when the federal murder charges were brought, the District Attorney would essentially be denied his entitlement to choose when to bring that indictment and would effectively have to bring state murder charges immediately after the federal indictment, lest he lose the right to do so by delay. This would effectively contravene the dual sovereignty doctrine, which discourages dual prosecutions. See United States v. Bernhardt, 831 F.2d 181 (9th Cir. 1987) (noting that simultaneous state and federal prosecutions “are duplicative and expensive and should be avoided as a matter of policy”). It would also effectively grant the defendant an entitlement to be charged promptly in state court once a related federal indictment is brought if the District Attorney believes that the federal prosecution will ultimately fail to prove a required element of federal indictment (such as the existence of a racketeering enterprise). The law does not recognize any such entitlement.
Nor has the defendant demonstrated the kind of prejudice that would justify reaching beyond the usual principles governing the right to a speedy trial. For instance, this is not a case in which the defendant contends that the Commonwealth knowingly waited to indict until after a key defense witness had died or otherwise become unavailable to testify, thus denying the defense the opportunity to present important exculpatory evidence. See United States v. Marion, 404 U.S. 307, 324-25 (1971) (explaining that Due Process prohibits the prosecution from intentionally postponing indictment in order to gain a tactical advantage or to harass the accused, if such delay causes “substantial prejudice” to the accused’s right to a fair trial). Rather, the prejudice alleged here is his incarceration for more than six years, much of it under the threat of the federal death penally, and the “presumptive prejudice” inherent from so long a delay between the time of the murder and the trial of the defendant. As to the former, while this Court certainly does not diminish the emotional toll that the threat of the death penally may have had on the defendant, this Court notes that the defendant was credited with his time in custody from the date of his arrest on the federal Narcotics IndictmentSeptember 20, 200 luntil his sentencing on that Indictment on June 20, 2007, for which he was sentenced to time served. As to the latter, the right to a speedy trial does not protect a defendant from any presumptive prejudice that may arise from the years that pass between the date of the crime and the date of trial; the statute of limitations provides the only protection to defendants from this delay, and there is no statute of limitations for murder. The right to a speedy trial only protects the defendant from unnecessary delay once he is charged with a crime through the date of trial for that alleged crime. Here, little more than a year has passed since he was indicted on the instant state murder charge, and there can be no reasonable contention that the modest delay in reaching trial is unreasonable or unnecessary.
This Court denies the defendant’s motion for additional discovery to litigate his motion to dismiss on speedy trial grounds because, as discussed, the motion to dismiss is fundamentally flawed, both logically and legally, and nothing that may reasonably be learned from the extraordinary discovery sought can cure those fundamental flaws. In view of those fundamental flaws, this Court also denies the defendant’s motion to dismiss on speedy trial grounds.
*268 ORDER
For the reasons detailed above, this Court ORDERS that:
1. The defendant’s motion to dismiss the indictment on speedy trial grounds is DENIED.
2. The defendant’s motion for discovery related to the motion to dismiss is also DENIED.

A racketeering enterprise is not an element of the crime of murder under Massachusetts law.

The motion to suppress the defendant’s recorded statement was filed on April 23, 2007, and decided by Judge Hely on August 1, 2007, which alone accounts for more than three months of excludable delay.

The defendant argues that he has not seen the arrest warrant that triggered his arrest, and that it may indeed have been a state arrest warrant for murder. This Court in this decision relies on Judge Hely’s factual findings in his decision denying the defendant’s motion to suppress recorded statements, which specifically stated that the September 20, 2001 arrest was based on the federal Narcotics Indictment. If the defendant obtains a copy of the arrest warrant and discovers that Judge Hely erred and it was not based on the federal Narcotics Indictment but on a state murder complaint, this Court will reconsider this decision.